IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **WILLIAM KURT DONAGHEY** § § § **vs.** § § § **COMMISSIONER OF SOCIAL SECURITY** § § § § § | **CIVIL ACTION 6:21cv275-JDK-KNM** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having considered Plaintiff's brief (ECF 16), the Commissioner's responsive brief (ECF 17) and Plaintiff's reply brief (ECF 18), the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

### PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on July 22, 2019, alleging disability beginning on October 31, 2018. The application was denied initially on September 4, 2019, and again upon reconsideration on February 13, 2020. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on November 12, 2020 and entered an unfavorable decision on February 2, 2021. Plaintiff sought review from the Appeals

Council.  On May 28, 2021, the Appeals Council denied the request for review.  As a result, the ALJ's decision became that of the Commissioner.  Plaintiff then filed this lawsuit on July 19, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits.  Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).  A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).  A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in her February 2, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since July 3, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease status post-coronary artery bypass grafting, congestive heart failure, and diabetes mellitus (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand and/or walk, in combination, for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push or pull commensurate with lifting restrictions. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; can frequently balance, stoop, kneel, crouch and crawl; and should avoid hazards such as unprotected heights and fast moving mechanical parts.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 26, 1971 and was 47 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 3, 2018, the amended alleged onset of disability date, through the date of this decision (20 CFR 404.1520(g)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at his hearing on November 12, 2020. At the hearing, Plaintiff's counsel announced that Plaintiff requested to adjust the alleged onset date to an earlier date of July 3, 2018, the date he began FMLA leave. Plaintiff testified that he previously worked as a trailer mechanic completing inspections, repairs and anything else needed for maintenance. The job required getting into tight spots underneath the trailer, lifting up to 50 pounds and generally performing strenuous work. Plaintiff stated that he completed the tenth grade and did not obtain a GED.

Plaintiff testified that he was off of work on FMLA leave beginning on July 3, 2018 and ending on August 13, 2018. He stated that he returned to work until November 6, 2018 and stopped working after suffering a heart attack. Plaintiff explained that he went to cardiac rehabilitation until he could no longer afford the co-payments. Plaintiff testified that he was released back to work in March 2019, but when he tried to work he had diabetes complications that prevented him from being able to work. At that point, Plaintiff stated that he started receiving long-term disability insurance benefits. Plaintiff explained that he lost that insurance in May 2020 for failure to recertify because the letter concerning recertification was sent to an old address and he did not receive it. Plaintiff testified that he has been unable to obtain affordable health care insurance since losing his disability coverage.

Plaintiff testified that he has poor vision, body stiffness, and difficulty walking long distances. Plaintiff explained that he stopped getting treatment shots in his eyes because he could not afford them. He stated that he has a son with a brain disorder who requires significant help

with his physical needs, but his wife has to help him take care of his son. Plaintiff testified that he no longer drives due to his poor vision. He experiences leg swelling, especially since having heart surgery, and sore spots on his legs. Plaintiff stated that he often experiences high blood sugar when he has stress or physical pain. When his blood sugar is high, he has confusion and difficulty understanding people. Plaintiff estimated that he has confusion approximately 50 to 75 times per month. Following a quadruple bypass, Plaintiff stated that his breathing improved, but he felt like he was "hauling a bunch of weight" on his body and couldn't get past that.[1] Plaintiff testified that he sometimes experiences breathlessness requiring him to sit down when he tries to bend over and pick up things. In May 2020, he was told that his "kidneys were messed up," and the swelling in his legs made it difficult to walk.[2] He stated that he also experiences stomach issues and he has been told that he has pancreatitis and a heart murmur.

A vocational expert witness, Evelyn Hartman, also testified at the hearing. Ms. Hartman classified Plaintiff's past work as service mechanic, DOT 807.381-022, medium, skilled, SVP 6. The ALJ presented Ms. Hartman a hypothetical individual with Plaintiff's age, education and work experience who is able to lift, carry, push or pull up to 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour day, sit for 6 hours in an 8-hour day, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch, and crawl and avoid hazards such as unprotected heights and fast moving mechanical parts. Ms. Hartman testified that the hypothetical individual could not perform Plaintiff's past work. Ms. Hartman identified the following jobs that would be available for the hypothetical individual: (1) production assembler, DOT 706.687-010, light, SVP 2, with approximately 70,160 jobs in the national economy; (2) courier or outside deliverer, DOT 230.663-010, light, SVP 2, with 40,300

---

[1] Administrative Record, ECF 14-2, at *76 (Bates stamp p. 75).
[2] *Id*. at *79 (Bates stamp p. 78).

jobs available in the national economy; and (3) parking lot attendant, DOT 915.473-010, light, SVP 2 with 62,750 jobs in the national economy.

The ALJ then presented a second hypothetical adding a limitation in vision, such that the individual can only perform jobs that do not require near visual acuity as defined by the DOT. Ms. Hartman testified that the following jobs would be available for an individual who cannot read small print or a computer screen, but who can see well enough to navigate around the workplace: (1) bottle packer, DOT 920.685-026, light, unskilled, SVP 2, with just over 8,800 jobs in the national economy; (2) cleaner, DOT 323.687-014, light, SVP 2, with an estimated 422,500 jobs in the national economy; and (3) laundry folder, DOT 369.687-018, light, SVP 2, with just over 19,000 jobs in the national economy.

The ALJ presented Ms. Hartman with a third hypothetical individual who is limited to the sedentary exertional level, meaning the individual can lift, carry, push and pull up to 10 pounds occasionally and less than 10 pounds frequently, stand or walk for 2 hours in an 8-hour day, sit for 6 hours in an 8-hour day, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch and crawl, and must avoid hazards such as unprotected heights and fast moving mechanical parts. Ms. Hartman testified that the individual could perform the following jobs: (1) document preparer, DOT 249.587-018, sedentary, SVP 2, with approximately 46,860 jobs in the national economy; (2) table worker, DOT 739.687-183, sedentary, SVP 2, with approximately 4,130 jobs in the national economy; and (3) addresser, DOT 209.587-010, sedentary, SVP 2, with just over 6,000 jobs in the national economy. If the hypothetical is amended to include no ability for near vision, Ms. Hartman testified that no unskilled, sedentary jobs would be available.

Ms. Hartman testified that acceptable absenteeism for maintaining employment is generally 8 to 10 days per year, or less than 1 day per month, according to Bureau of Labor Statistics and her experience with employers. She opined that none of the identified jobs would be available if the individual needs to elevate his legs to hip level because many workstations do not accommodate level elevation beyond a footstool. Generally, Ms. Hartman stated that employees in unskilled, sedentary jobs need to learn the job in 30 days to maintain employment, such that the person does not continue needing frequent direction after that time period.

*Medical Evidence*

Plaintiff went to the emergency room on February 21, 2017 with right arm pain and numbness and a cough lasting for two weeks. Chest X-rays showed no acute chest process. He was diagnosed with nonspecific chest pain and cervical radiculopathy and prescribed a Zithromax Z-Pak, Cyclobenzaprine and ibuprofen. Subsequent X-rays on March 30, 2017 showed interval development of pulmonary congestion and findings of early pulmonary edema, tiny pleural effusions that had developed and an enlarged heart. On April 6, 2017, Plaintiff was admitted for observation due to high blood sugar and cough with shortness of breath. Plaintiff reported that he had not taken his medication for about a year. An echocardiogram showed normal right ventricle and left ventricle systolic function with left ventricle ejection fraction estimated at 60%, mild diastolic dysfunction and no severe valvular disease. Plaintiff was discharged on April 8, 2017 with the final diagnoses of acute bronchitis, diabetes mellitus 2, uncontrolled and thyroid nodule. Plaintiff returned to the emergency room with abdominal pain on May 24, 2017. He was discharged with prescriptions for hydrocodone and Zofran.

Plaintiff went to the emergency room on June 29, 2018 with a left thigh abscess. He was treated with a surgical incision and drainage of the abscess and discharged on July 2, 2018 with

wound care instructions. Plaintiff went to the wound care clinic on July 11, 2018. The progress note on July 19, 2018 documents healthy tissue in the wound bed base and no fever or cellulitis. There were no new complaints or problems with dressing changes on July 25, 2018. The wound was noted to be smaller at a follow up on August 1, 2018 and continued to show signs of healing on August 8, 2018 and August 15, 2018. On August 22, 2018, Dr. Michaelson noted that the wound was essentially healed and he was discharged from the wound care clinic.

Dr. Torti treated Plaintiff for diabetic retinopathy with macular edema. He noted no evidence of iris neovascularization. Dr. Torti treated Plaintiff with Avastin injections.

On November 6, 2018, Plaintiff returned to the emergency room complaining of right arm pressure and pain, diarrhea, chest tightness, and shortness of breath. Chest X-rays showed normal heart size with clear lungs and no pleural effusion or adenopathy. An angio chest CT showed normal appearance of the thoracic and abdominal aorta for Plaintiff's age, similar appearing heterogenous and enlarged thyroid with dominant exophytic nodule extending into the superior mediastinum, the development of pathologically enlarged lymph nodes within the mesentery of the abdomen, multiple fluid-filled loops of small bowel with mild wall enhancement, and coronary artery atherosclerosis. An EKG suggested an old inferior myocardial infarction. Dr. Choi opined that Plaintiff's normal function on echo and moderate LVH showed likely demand ischemia rather than a true myocardial infarction. An upper GI endoscope examination on November 11, 2018 showed normal esophagus, stomach and duodenum. Plaintiff had a left heart catheterization procedure on November 13, 2018.

Plaintiff returned to the emergency room complaining of leg swelling and feeling like he had fluid on his lungs with mild shortness of breath on January 13, 2019. His diagnoses included

heart failure, hypertension, hyperglycemia and edema. A chest X-ray showed stable chest. He was discharged the same day with prescriptions for potassium chloride and Lasix.

Plaintiff was referred to Dr. Ramy Ayad for a cardiology assessment. On January 29, 2019, Plaintiff reported continued dyspnea on exertion and left pleural effusion following a quadruple coronary bypass. Dr. Ayad increased the Lasix dosage and added amlodipine. At a return visit on February 12, 2019, Plaintiff exhibited considerable improvements in leg swelling and shortness of breath. Dr. Ayad noted a suspected small, but resolving, left pleural effusion. He reduced the Lasix dosage and increased the amlodipine dosage for high blood pressure. A February 14, 2019 chest X-ray showed a decreasing, small left pleural effusion. Plaintiff returned for another follow up on April 12, 2019. Plaintiff reported that he returned to work, but he was unable to get through the day due to fatigue and shortness of breath and needed frequent breaks. On June 11, 2019, Plaintiff reported improved breathing and activity tolerance. He also stated that he was spacing out and skipping medications due to losing health insurance coverage. An echocardiogram showed ejection fraction preserved at 50%.

Plaintiff applied for long-term disability insurance benefits from CIGNA. Dr. Leach signed a medical request form in response to the application on June 18, 2019, stating that Plaintiff's ability to work is impacted by "limited exertional ability," such that he should perform "no walking more than 50 feet every 20 minutes," "no repetitive lift/bend," and "no lift more than 20 pounds per 5 minutes."[3] Dr. Ayad signed a medical request form on June 24, 2019, stating that Plaintiff's limitations include "no walking more than 50 feet every 20 minutes" and "no lifting more than 20 pounds."[4] Dr. Ayad completed another medical request form on November 13, 2019,

---

[3] Administrative Record, ECF 14013, at *224 (Bates stamp p. 1886).
[4] Administrative Record, ECF 14-13, at *210 (Bates stamp p. 1872).

11

stating that Plaintiff's limitations included "limited exertion ability" and "no walking more than 50 feet every 20 min."[5]

Plaintiff's blood pressure remained elevated at an examination by Dr. Leach on July 9, 2019 and he exhibited leg swelling. He reported taking his medications regularly after finding better pricing.

Plaintiff went to the emergency room with fever and cough on October 2, 2019. An EKG showed tachycardia and a chest X-ray showed cardiomegaly. Plaintiff returned to the emergency room with abdominal pain, cough and shortness of breath on January 10, 2020. An EKG was normal. On May 22, 2020, Plaintiff again went to the emergency room with abdominal pain in the left lower quadrant and leg swelling. An abdominal ultrasound was normal, an abdominal CT showed findings suggestive of acute pancreatitis, and a chest X-ray showed worsening left lower lobe atelectasis and enlarging effusion. Plaintiff was admitted for chronic heart failure exacerbation and treated with Lasix.

State agency medical consultants reviewed the medical evidence and made findings. On September 8, 2019, Dr. Michal Douglas identified Plaintiff's medically determinable impairments to include congestive heart failure and diabetes mellitus. He opined that Plaintiff retained a physical residual functional capacity to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull with the same restrictions as lift and carry. Dr. Douglas additionally determined that Plaintiff can occasionally climb ramps/stairs and ladders/ropes/scaffolds. On reconsideration, Dr. Scott Spoor also reviewed the medical evidence on February 13, 2020 and agreed with Dr. Douglas's conclusions.

---

[5] Administrative Record, ECF 14-13, at *193 (Bates stamp p. 1855).

## DISCUSSION AND ANALYSIS

Plaintiff submits that the Commissioner's decision is not supported by substantial evidence and applies the wrong legal standards. More specifically, Plaintiff asserts two issues: (1) whether the ALJ failed to properly consider his lack of access to healthcare, mischaracterized evidence and failed to grant a request for consultative examination; and (2) whether the Appeals Council improperly failed to consider additional evidence submitted with the request for review. Plaintiff alleges that the combination of his lack of access to healthcare and the ALJ's denial of his request for a consultative examination resulted in prejudice. Moreover, Plaintiff submits that the ALJ improperly construed his lack of access to healthcare as noncompliance. Plaintiff further asserts that he submitted new evidence to the Appeals Council with his request for review, including two medical source statements. Plaintiff complains that the Appeals Council failed to mention the medical source statements in the decision denying his request for review and refused to consider medical evidence concerning his continuing medical problems because it was dated after the date of the ALJ's decision.

In response, the Commissioner asserts that Plaintiff's failure to seek low cost or no cost medical care was only one of many factors considered by the ALJ. The Commissioner submits that the inability to afford care is irrelevant because the evidence does not support a finding of disability even without treatment. The Commissioner additionally argues that the need for a consultative examination is left to the discretion of the ALJ and an examination was not needed here to enable the ALJ to render an informed decision. Concerning the evidence presented to the Appeals Council, the Commissioner asserts that the record does not show that the medical source statements identified by Plaintiff were received by the Appeals Council. Instead, the record only includes a portion of the March 11, 2021 examination summary. Even so, the Commissioner

contends that the additional evidence is consistent with the medical record and the new functional capacity assessments fail to include supporting medical evidence.

Plaintiff filed a reply brief asserting that the Commissioner failed to address the lack of substantial evidence supporting his decision. Plaintiff asserts that the new medical source statement signed by Dr. Leach indicates that it applies to a time period beginning prior to 2020 through the date it is signed, February 12, 2021, and should have been considered. Plaintiff submits that the ALJ improperly made a finding that there was no evidence Plaintiff sought low-cost medical care and referred to noncompliance to detract from the severity of his condition. Plaintiff argues that he alerted the ALJ to a loss of visual acuity and a consultative examination would have been appropriate.

A.  *Inability to Afford Healthcare*

Plaintiff asserts that the ALJ improperly considered his inability to pay for medical care as noncompliance with medical treatment. In her written decision, the ALJ summarized treatment notes stating that Plaintiff "appropriately prioritized Lasix," when he ran out of hypertension medication and that he ran out of medication due to cost.[6] She also noted that Plaintiff testified he could not complete cardiac rehabilitation due to cost.[7] The ALJ concluded that "[t]here is some evidence of non-compliance with recommended lifestyle changes, medication management, and cardiac rehabilitation [Exhibits 6F/6 and 12F/117), although the claimant testified that this was due in part to cost. There is no evidence of seeking low cost care option."[8]

While recognizing that the record supports Plaintiff's testimony that cost affected his access to care and medications, the ALJ did not make any findings or offer any opinions

---

[6] Administrative Record, ECF 14-2, at *46–47 (Bates stamp p. 45–46).
[7] *Id*. at *47 (Bates stamp p. 46).
[8] *Id*. at *48 (Bates stamp p. 47).

14

concerning whether Plaintiff's physical condition would be improved with medication or treatment. A medical condition that would not be disabling with appropriate surgery, treatment or medication may nevertheless be disabling for a claimant who cannot afford that treatment. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). The assessment of a plaintiff's inability to pay for medical care is not necessary if there is no finding that treatment of his impairments would restore his ability to work. *Elam v. Barnhart*, 386 F.Supp.2d 746, 758 (E.D.Tex. Sept. 9, 2005). Here, the ALJ did not making any findings based on an assumption that his condition would be improved with more treatment and medication. Instead, the ALJ considered Plaintiff's condition as is, including periods of prioritizing medications due to cost. Plaintiff has not shown that the ALJ erroneously failed to consider his financial limitations relating to medical care.

B.      *Consultative Examination*

In his brief, Plaintiff complains that the ALJ denied his request for a consultative examination. At the conclusion of Plaintiff's hearing before the ALJ, Plaintiff's attorney stated, "based on the claimant's lack of access to healthcare, we would request a consultative examination."[9] In response, the ALJ stated, "I'm frankly not convinced that it's necessary at this point, but I will take a look at the records again with an eye towards that."[10]

An ALJ has a duty to fully and fairly develop the facts relating to a claimant's application for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Reversal for the ALJ's failure to adequately develop the record, however, is only required if the claimant shows prejudice. *Id*. Ordering a consultative examination is a matter within the ALJ's discretion. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (per curiam) (citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam)). "An examination at government expense is not required 'unless the

---

[9] Administrative Record, ECF 14-2, at *89 (Bates stamp p. 88).
[10] *Id*.

record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision.' " *Id*.   Stated differently, if necessary for an ALJ to make the disability decision, he should order a consultative examination at government expense. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989).

Here, Plaintiff makes a conclusory argument that a consultative examination was necessary due to Plaintiff's inability to afford more medical care.  In the ALJ's decision, in addition to evaluating physical functional capacity assessments completed by State agency consultants reviewing the record, the ALJ reviewed and considered physical capacity questionnaires completed by treating physicians Dr. Ayad and Dr. Leach.  The record summarized by the ALJ includes treatment notes throughout the time period between the alleged onset of disability and the date of the ALJ's decision.  Plaintiff has not made a showing that a consultative examination was necessary for the ALJ to be able to make a disability decision or that prejudice resulted from the ALJ's decision to deny the request. *Pierre v. Sullivan*, 884 F.2d at 802.

C.     *Appeals Council Review*

Plaintiff submits that the Appeals Council improperly failed to consider two medical source statements and refused to consider examination notes submitted with the request for review.  The Appeals Council granted a request for additional time to submit additional evidence on March 30, 2021.[11]  Plaintiff's brief includes a fax receipt dated May 10, 2021, purporting to show that 19 pages were faxed to the Appeals Council on May 10, 2021.[12]  Plaintiff sent a second request for additional time that was denied on May 16, 2021.[13]  Notably, the administrative record does not include the full 19 pages submitted by Plaintiff with his brief and instead only includes 3 pages of

---

[11] Administrative Record, ECF 14-2, at *30 (Bates stamp p. 29).
[12] Plaintiff's Brief, ECF 16-1, at *2–20.
[13] Administrative Record, ECF 14-2, at *16 (Bates stamp p. 15).

16

a 7-page medical record from a March 11, 2021 examination by Dr. Deepa Amberker.[14] In its decision, the Appeals Council only refers to the submission of the treatment notes. The Appeals Council noted that the newly submitted treatment notes are dated March 11, 2021, and do not relate to whether Plaintiff was disabled through February 2, 2021—the date the ALJ issued her decision.[15]

"In deciding whether to deny the claimant's request for review, the AC must consider and evaluate any 'new and material evidence' that is submitted, if it relates to the period on or before the ALJ's decision." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). "The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review." *Id*.

Here, the Appeals Council recognized receipt of the televisit treatment notes from March 11, 2021, but concluded that this additional evidence did not relate to the time period at issue. The Appeals Council advised Plaintiff to apply again if he wants the Commissioner to consider whether he was disabled after February 2, 2021, the date of the ALJ's decision.[16] The treatment notes specifically refer to an examination that occurred more than a month after the ALJ issued her decision. Plaintiff has not shown that this evidence is material to relevant time period, such that it was error for the Appeals Council to deny review.

Plaintiff also complains, however, that the Appeals Council failed to consider two medical source statements that are not included in the administrative record. The identified medical source statements are signed by Dr. Leach and Dr. Amberker on February 12, 2021 and April 1, 2021, respectively. Plaintiff submits that they are material to the disability determination because they

---

[14] Administrative Record, ECF 14-2, at *35–37 (Bates stamp pp. 34–36).
[15] Administrative Record, ECF 14-2, at *10 (Bates stamp p.9).
[16] Administrative Record, ECF 14-2, at *10 (Bates stamp p. 9).

include consideration of his condition in and prior to 2020. There is no indication that these records were actually received by the Appeals Council. They are not part of the administrative record.

Plaintiff's reply brief fails to address the Commissioner's assertion that the Appeals Council did not receive the medical source statements signed by Dr. Leach and Dr. Amberker. The administrative record corroborates that the records were not received. The Appeals Council cannot consider and evaluate medical evidence that it did not receive. As a result, Plaintiff has not shown error by the Appeals Council.

For the reasons above, the ALJ applied the correct legal standards and the decision is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). The written objections shall not exceed eight pages. Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on*

*other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 18th day of August, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE